UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>JESSICA NESBITT, also known as "Madame Priscilla Belle" | No. 19 CR 692<br><br>Judge Robert M. Dow, Jr. |

**CONSOLIDATED RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits the following consolidated response to defendant's pretrial motions [R. 66, 67, 69]. For the following reasons, this Court should deny each motion.

**I.    BACKGROUND**

On December 19, 2019, a grand jury returned a superseding indictment against defendant. R. 29, R. 33 Ex. A.[1] That superseding indictment charges defendant with 13 counts, as follows:

- Count 1: Conspiracy to (a) violate the Travel Act by traveling in interstate commerce and using interstate facilities with intent to promote state prostitution offenses, in violation of 18 U.S.C. § 1952(a)(3); (b) violate the Mann Act by transporting an individual in interstate commerce with intent to engage in prostitution, in violation of 18 U.S.C. § 2421(a); and (c) violate the Mann Act by inducing an individual to travel in interstate commerce with intent to engage in prostitution, in violation of 18 U.S.C. § 2422(a); all in violation of 18 U.S.C. § 371.

---

[1] Due to a clerical error, the publicly accessible version of the superseding indictment filed at R. 29 is missing a page. The government filed an unopposed motion to amend the superseding indictment at R. 33, attaching the corrected superseding indictment as Ex. A thereto. This Court should grant that motion, which currently remains pending.

1

- Counts 2-8: Substantive Travel Act violations, in violation of 18 U.S.C. § 1952(a)(3).

- Counts 9-10: Substantive Mann Act violations, in violation of 18 U.S.C. §§ 2421(a) and 2422(a).

- Counts 11-13: Structuring, in violation of 31 U.S.C. § 5324(a)(3) and (d)(2).

## II. ARGUMENT

### A. Count 1 Properly Alleges a Multi-Object Conspiracy to Violate Federal Law

In R. 66, defendant seeks dismissal of Count 1. An indictment is legally sufficient if it: (1) states "each of the elements of the crime charged"; (2) provides "adequate notice of the nature of the charges so that the accused may prepare a defense"; and (3) allows "the defendant to raise the judgment as a bar to future prosecutions for the same offense." *United States v. Fassnacht*, 332 F.3d 440, 444–45 (7th Cir. 2003) (citing *Russell v. United States*, 369 U.S. 749, 763–63 (1962); *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). "In reviewing the sufficiency of an indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner." *United States v. McNeese*, 901 F.2d 585, 602 (7th Cir. 1990). An indictment that "'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive." *White*, 610 F.3d at 958–59 (quoting *Smith*, 230 F.3d at 305).

With respect to the conspiracy charged in Count 1, a properly alleged § 371 violation contains the following elements: (1) an express or implied agreement

2

between two or more people to commit a crime, (2) defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy, and (3) one of the conspirators committed an overt act in an effort to advance the goals of the conspiracy. Seventh Circuit Criminal Pattern Jury Instructions §§ 5.08(A), 5.09. Count 1 properly alleges each of these elements. First, paragraph 2 charges that defendant agreed with others to commit a crime, namely, federal violations of the Travel Act and the Mann Act. Second, the description of the means and methods of the conspiracy contained in paragraphs 3-13 sufficiently allege that defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy, by, among other things, hiring prostitutes, transporting prostitutes, creating email accounts, personally traveling to commit sex acts, and depositing cash payments for sex acts. Third, paragraph 14 alleges not just one overt act in furtherance of the conspiracy, but eleven. Thus, the conspiracy charged in Count 1 is legally sufficient.

Seeing this, defendant attacks only the first requirement of a properly charged conspiracy, complaining that the objects of Count 1 improperly includes both federal and non-federal offenses. This argument fundamentally misreads the indictment, and should be rejected. The government has no serious quarrel with the general legal principle from *Johnson* that the objects of a § 371 conspiracy must include only federal offenses. R. 68 at 1. But Count 1 actually follows that rule: paragraph 2 expressly states that defendant "did knowingly conspire with others known and unknown to the Grand Jury *to commit an offense against the United States, that is*,

3

[three violations of the Travel Act and Mann Act]." The clause "that is" plainly serves to include those three violations of the Mann Act and the Travel Act as the "offense against the United States" that defendant conspired to commit. In other words, those three violations of the Mann Act and the Travel Act—indisputably federal offenses—are the only objects of the charged conspiracy. There simply are no non-federal offenses included as objects of the conspiracy. This indictment therefore comports with *Johnson*, even if that was binding precedent on this Court.

Where defendant went awry is that she wrongly conflated Count 1's description of the means and methods of the conspiracy with the conspiracy's objects. The examples pointed to in her motion are drawn from paragraphs 3-13 of Count 1, which each describe how the conspiracy operated. They do not describe what crimes the conspirators agreed to commit. That is why each cited paragraph begins with the phrase, "It was further part of the conspiracy": to make clear that it describes different facets of the charged criminal agreement and defendant's knowledge and intent regarding that agreement. Such descriptions are just not the same as the objects of the conspiracy. *See, e.g.*, *Wong Tai v. United States*, 273 U.S. 77, 81 (1927) (differentiating between allegations charging defendant with "conspiring with a named person and others to commit certain specified offenses in violation of the Opium Act" and allegations further charging him "with doing various specified acts to effect the object of the conspiracy"); *United States v. Murzyn*, 631 F.2d 525, 534-35 (7th Cir. 1980) (differentiating between evidence of acts of "intrastate auto theft and sale" and the "object of the conspiracy, which was the interstate transportation and

4

sale of stolen vehicles." (internal quotation mark omitted)); *United States v. Andrews*, 754 F. Supp. 1189, 1194 (N.D. Ill. 1990) (differentiating between "the statute violated by each conspiracy's intended object" and "various other details regarding the criminal methods employed by the conspirators"). Indeed, if defendant's reading were correct, then every paragraph of every conspiracy count must perfectly describe a federal offense standing alone. That is not the law. *See, e.g.*, *Braverman v. United States*, 317 U.S. 49, 53 (1942) ("The overt act, without proof of which a charge of conspiracy cannot be submitted to the jury, may be that of only a single one of the conspirators and need not be itself a crime.").

In sum, the conspiracy charged in Count 1 properly alleges only federal offenses as the objects of the conspiracy, and should not be dismissed.

### B. A Bill of Particulars Is Not Required, and the Government Has Already Provided the Information Sought

Second, this Court should deny defendant's motion for a bill of particulars regarding the Travel Act charges in Counts 2-8. "The test for whether a bill of particulars is necessary is whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981) (internal quotation mark omitted). Defendant does not complain that the superseding indictment fails to set forth the necessary elements of a Travel Act offense; indeed, a review of Counts 2-8 reveals that all required elements are properly alleged. *See, e.g.*, 7th Circuit Pattern Criminal Jury Instructions (2012) at 549 (setting forth the three elements of a Travel Act offense). In fact, the indictment goes even further than what

5

is legally required by providing (1) the specific interstate facility used (and in the case of electronic payments, the exact amount of the payment), and (2) the specific statutory citations for the unlawful activity committed. Because the indictment alleges all required elements and then some, defendant's only argument in favor of a bill of particulars can only be that she does not have enough information to prepare for trial.

This argument fails for two reasons. As a general matter, "a bill of particulars is not required when information necessary for a defendant's defense can be obtained through some other satisfactory form." *United States v. Fassnacht*, 332 F.3d 440, 447 n.2 (7th Cir. 2003) (internal quotation marks omitted). In *Fassnacht*, the Seventh Circuit expressly found that "extensive pretrial discovery . . . further obviate[ed] the need for a bill of particulars." *Id.* So too here: as defendant's motion implicitly acknowledges, the government has already provided extensive pretrial discovery, which contains the information necessary for her defense. As this Court has previously held, no bill of particulars is necessary under these circumstances. *See, e.g.*, *United States v. Tomkins*, 2012 WL 1357701, at *1 (N.D. Ill. Apr. 19, 2012) ("In sum, where, as here, the indictment includes (i) the elements of each offense charged, (ii) the time and place of the defendant's conduct constituting the violation, and (iii) a citation to the statute or statutes violated, and the Government also has provided the necessary discovery to Defendant to defend against either theory, a bill of particulars is not necessary.").

6

A bill of particulars is even more unnecessary here because, as defendant admits, the government *has already volunteered all of the information she seeks in her motion*. Specifically, on February 21, 2020, the undersigned emailed defense counsel with the following information for each of Counts 2-8: (1) the specific date of the "acts thereafter performed"; (2) the nature of such acts (*i.e.*, "acts associated with a party" or "acts associated with travel, and the prostitution activities that occurred thereafter"); and (3) which of Clients A-D and Individuals A-E, if any, are associated with each count. That is information that goes beyond the elements of each count that the government was not legally required to provide, is everything defendant seeks in her motion, and is certainly enough information for her to adequately prepare a defense to each count. *See, e.g.*, *Fassnacht*, 332 F.3d at 446 ("[T]he defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." (internal quotation marks omitted)).

Thus, in light of the textual sufficiency of the superseding indictment, the breadth of the discovery already produced to date, and the additional information already volunteered by the government, no bill of particulars is necessary.

### C. This Court Should Continue to Require that Defendant Obtain Approval from the Government Before Personally Contacting Potential Trial Witnesses

Finally, this Court should deny defendant's motion to reconsider this Court's prior ruling regarding the circumstances under which defendant may personally contact former clients and employees of her business. The gist of defendant's motion is that the government has now produced Rule 16 discovery, which reveals that she

7

has not attempted to obstruct justice or tamper with a witness. R. 69 at 2. That is not correct.

According to an investigative report produced to defendant on or about November 25, 2019,[2] a former employee of defendant described to law enforcement how defendant had personally contacted that employee after that employee was approached by law enforcement following a January 2017 search of defendant's residence and the KE building. In summary, according to that employee, defendant stated that she wanted to meet all employees as a group so they could go over their "story" and make sure the details were all consistent. That employee specifically told law enforcement that defendant told the employee that she needed the employee to say in a written declaration that the employee never saw criminal activity or prostitution activity occur at KE. Defendant then planned to provide that written declaration to law enforcement. In response, the employee refused to speak further with defendant's private investigator, and ceased speaking to defendant.

As another example, according to another investigative report produced to defendant on or about February 11, 2020,[3] a different former employee of defendant told law enforcement that defendant had established a procedure for what her employees should do if law enforcement searched the KE building, which defendant called a "raid protocol." As part of the "raid protocol," defendant indicated that she had the ability to delete KE cellphones and iPads remotely.

---

[2] Bates-stamped FBI_001-000806.

[3] Bates-stamped FBI_007-007250.

As these documented contemplations of witness and evidence tampering illustrate, it is entirely conceivable that defendant would coach any former employee or client as to the "story" they should tell to law enforcement should she receive the blessing from this Court to contact them directly. Allowing defendant to participate in conversations with these individuals in any capacity—even with counsel present—would still present this risk, as shown by defendant's prior attempt to enlist representatives in her attempt to tamper with a witness. And requiring defendant to preclear specific names with Pretrial Services or with the Court is not a solution, as the significance of each person to the government's case is most known to the government at this point.

This Court has previously recognized an easy solution to defendant's concerns about not being required to produce her witness list this far before trial: permit only her counsel to have direct conversations with any former employees and clients who may wish to aid her defense. The government continues to have no objection to that option, which is routine in nearly all federal criminal cases and is perfectly allowable under this Court's order. Indeed, if "many of these [individuals] are her friends" and are purportedly willing to offer defendant employment opportunities, it is difficult to imagine why they would not be willing to assist her by relaying communications through her counsel (who is bound by a duty of confidentiality and is already privy to the details of the alleged conduct contained in the discovery). R. 69 at 5. The government is concerned that these individuals are instead more interested in coordinating their "story" with defendant to their mutual benefit, which is what this

9

Court's order is designed to prevent. Defendant has presented no good reason to reconsider it now.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's pretrial motions [R. 66, 67, 69], as well as grant the government's outstanding unopposed motion to amend the superseding indictment [R. 33].

Dated: August 10, 2020

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Devlin N. Su*
DEVLIN N. SU
ERIKA CSICSILA
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-0667