IN THE
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 19 CR 692 |
| v. ) | |
| ) | Hon. Robert M. Dow, Jr. |
| JESSICA NESBITT ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S CONSOLIDATED
RESPONSE TO DEFENDANT'S PRE-TRIAL MOTION TO
DISMISS COUNT 1, MOTION FOR BILL OF PARTICULARS, AND
MOTION FOR RECONSIDERATION OF ORDER REGARDING
BOND CONDITION 7(g) [R. 66, 67, 69]**

Now Comes the defendant, JESSICA NESBITT, by and through her attorney, Sheppard Law Firm, P.C., and replies to the government's response to her pre-trial motions as follows:

### I. REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT 1 (CHARGING CONSPIRACY)

Defendant moved to dismiss count 1 of the superseding indictment – charging conspiracy – on grounds that it alleged that she conspired to commit both federal and non-federal offenses. Count 1 repeatedly alleges that Ms. Nesbitt agreed to promote prostitution within Illinois as "part of" the conspiracy. The government responds that those portions of the indictment were not "objects" of the conspiracy but were merely "means and methods" of the conspiracy. R. 76. That distinction, however, is not clear in the indictment.

As an initial matter, the indictment does not use the terms "object" of the conspiracy or "means and methods" of the conspiracy. Several other facets of the indictment also add to the confusion on this issue. First, the allegations regarding

defendant's alleged agreement to promote prostitution within Illinois come right after the paragraph where defendant is accused of conspiring to commit Travel Act offenses and a Mann Act offense. Doc. 29 at ¶2. In the very next paragraph, without any indication that the indictment was about to discuss "overt acts" or "means and methods," the indictment alleges "[i]t was part of the conspiracy that NESBITT and the KE employees agreed to promote prostitution and perform acts of prostitution, and cause the promotion of prostitution and the performance of acts of prostitution, at KE [which is within Illinois] and at other locations outside of Illinois ***." *Id.* at ¶3. Reading paragraph 3 in conjunction with paragraph 2 makes it appear that Ms. Nesbitt is charged with conspiring to promote prostitution within Illinois.

Second, paragraph 3 does not merely allege that Ms. Nesbitt facilitated the promotion or performance of prostitution at KE; it alleges that she "agreed" to do so as "part of the conspiracy." *See id.* The government correctly recites that an "agreement" is an element of a conspiracy charge. And the fact that the indictment alleges that Ms. Nesbitt "agreed" to promote prostitution at KE (within Illinois) makes it appear as though that allegation, if proven, would be sufficient to sustain the charge of conspiracy.

Third, unlike paragraph 2, which the government asserts is the only paragraph which sets out the purpose of the conspiracy, paragraph 4 is the paragraph which actually uses the word, "purpose," when describing why defendant employed individuals at KE: "[i]t was further part of the conspiracy that NESBITT

2

employed, and caused to be employed, the KE employees at KE in part **for the purpose** of performing acts of prostitution with KE clients." Doc. 29 at ¶4 (emphasis added). Such a pleading makes it appear that performing acts of prostitution at KE (within Illinois) was a "purpose" of the conspiracy.

Fourth, there is a bolded heading in the conspiracy count which provides, "State Law: Prostitution Offenses." This bolded heading flags for the reader the importance of state law prostitution offenses in the indictment and adds to the confusion surrounding the conspiracy's purposes.

As one court aptly put it: "There is 'perhaps no crime an exact definition of which it is more difficult to give than the offense of conspiracy.'" *See e.g., Pinkerton v. United States,* 145 F.2d 252, 254 (5th Cir. 1944)(citing, 15 C.J.S., Conspiracy, § 35, p. 1057. And, in this case, the indictment's references to the defendant "agree[ing]" to employ individuals "for the purpose" of prostitution within Illinois adds to that confusion.

At a minimum, the portions of the indictment which allege that Ms. Nesbitt agreed to employ individuals for the purpose of promoting/performing prostitution within Illinois – paragraphs 3,4, and 9 – should be stricken as prejudicial surplusage. *See* Fed.R.Cr.P.7(f); *United States v. Marshall*, 985 F.2d 901, 905 (7th Cir. 1993)("Within the discretion of the court, surplusage may be stricken from the indictment if the court finds the language to be immaterial, irrelevant, or prejudicial.").

3

## II. REPLY TO THE GOVERNMENT'S RESPONSE TO MOTION FOR A BILL OF PARTICULARS

The government has responded to defendant's motion for a bill of particulars by noting that it has already given the defendant the requested information. R.76 at 7. However, the informal disclosure was accompanied by the caveat that it would not bind the government's proofs at trial in any way. See R.67 at 3 (Deft.'s Memo. in Support of Bill of Particulars). One of the purposes of a bill of particulars is to limit the proofs at trial. *See United States v. Vasquez–Ruiz*, 2002 WL 171969, at *2 (N.D. Ill. 2002). Defendant's request for a bill of particulars thus remains pertinent.

The case of *United States v. Tomkins*, No. 07 CR 227, 2012 WL 1357701, at *1 (N.D. Ill. Apr. 19, 2012), cited by the government, is distinguishable. In *Tomkins*, the defendant argued that an indictment which had charged him with "mail[ing] or caus[ing] to be mailed" threatening communications "d[id] not indicate whether [he was] the author or not" of the threatening communications. *Id.* The defendant contended that in light of these alternative theories of criminal liability, he needed to know additional details to prepare his defense. This Court denied the bill of particulars under those circumstances. *Id.*

The indictment in *Tomkins* was clearer than counts 2-8 in this case. In *Tomkins*, the indictment had clearly specified the acts which the defendant was charged with committing – either mailing or causing to be mailed threatening communications. Comparatively, counts 2-8 allege that Ms. Nesbitt performed

4

"acts" after using a facility in interstate commerce for the purpose of carrying on prostitution. Unlike in *Tomkins,* the indictment does not specify those "acts."

Unlike in *Tomkins,* Ms. Nesbitt is not requesting the government to specify whether she, herself, was the perpetrator of the acts in question. She is merely asking for information whereby she can discern what "acts" she is charged with facilitating and whether they occurred in temporal proximity to her alleged use of a facility in interstate commerce – an extremely material inquiry in a Travel Act prosecution. *See United States v. Altobella*, 442 F.2d 310, 314 (7th Cir. 1971)("to warrant federal intervention we believe the statute requires a more significant use of a facility of interstate commerce in aid of the defendants' unlawful activity. . .").

Based on the foregoing, defendant moves this Court to sustain her motion for a bill of a particulars.

### III. REPLY TO THE GOVERNMENT'S RESPONSE TO MOTION FOR RECONSIDERATION OF THE ORDER REGARDING CONTACT WITH FORMER CLIENTS AND EMPLOYEES

The government's response does not specify why the defense proposal to allow Ms. Nesbitt to have contact with former clients and employees *with defense counsel present* is unreasonable. The response does not distinguish this case from others – cited in defendant's motion (R. 69 at 7) – which allowed that condition. *See* R.69 at 7.

The government's response cites interviews of two former, disgruntled, employees, in an effort to show that defendant cannot be trusted to communicate with former employees. As an initial matter, the defendant had not been charged

5

with any wrongdoing at the time of the alleged communications. Moreover, the government's response does not allege any communications with any former *clients* that are cause for concern.

As for the first report which the government cited regarding an employee, five factors negate the probative value of the report.

First, contrary to the government's response, the report does not specify that Ms. Nesbitt requested a "written declaration" from this employee.

Second, defendant vehemently contests the reliability of the allegations by that former employee. Other witness statements produced by the government directly contradict this employee's allegations in the report in question.

Third, the report does not document verbatim statements by the employee. On information and belief, the employee has not signed a statement wherein she avers to the allegations set forth in the FBI 302 report.

Fourth, there is no allegation that Ms. Nesbitt asked this employee to testify in some respect. Rather, Ms. Nesbitt's request of this employee – according to the 302 report – was simply for this employee to speak with Ms. Nesbitt's own legal team.

Fifth, Ms. Nesbitt was not under any type of criminal charge at that time. Accordingly, she violated no rules in speaking directly with this former employee. A search warrant had been executed at the property in question but no arrests were made. Based on the foregoing, the allegations by this unreliable, disgruntled, former

6

employee are hardly probative of Ms. Nesbitt's ability to comply with conditions of bond.

As for the allegation that Ms. Nesbitt had an ability to remotely delete devices, that is a far cry from an allegation that she actually deleted a device, let alone destroyed potential evidence. As for having a capability to remotely wipe a device, according to a recent survey, published in the Harvard Business Review, "21% of companies 'perform remote wipes when an employee quits or is terminated.'" https://hbr.org/2014/01/yes-your-company-can-wipe-your-personal-phone-for-now. Accordingly, a business owner's ability to wipe a device is not nefarious. This is particularly so in this case where no devices were actually erased.

Ms. Nesbitt is prepared to avoid any contact with any individual listed in the indictment. However, prohibiting her, absent government approval, from personal contact with all 9,000 former clients and hundreds of former employees – many of whom are her friends – is not the least restrictive condition available. The government's response also does not specifically address defendant's First Amendment freedom-of-association argument.

## CONCLUSION

Based on the foregoing – and for the reasons stated in defendant's previously filed motions – defendant moves this Court to sustain her motion to dismiss count 1, motion for a bill of particulars, and motion for reconsideration of the order regarding bond condition 7(g).

Respectfully submitted:


/s/ Adam J. Sheppard
Attorney for Defendant



SHEPPARD LAW FIRM, P.C.
BARRY SHEPPARD / ADAM SHEPPARD
180 N. LaSalle Street, Suite 2510
Chicago, Illinois 60601
(312) 443-1233
adam@sheppardlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing reply was served on September 3, 2020 in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Adam J. Sheppard<br>Attorney for Defendant

SHEPPARD LAW FIRM, P.C.
BARRY SHEPPARD / ADAM SHEPPARD
180 N. LaSalle Street, Suite 2510
Chicago, Illinois 60601
(312) 443-1233
adam@sheppardlaw.com
Adam Sheppard IL Bar. No. 6287375