# FILED

DEC 08 2023

February 8, 2023 *MA*

JUDGE MATTHEW F. KENNELLY
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 692 |
| v. | |
| JESSICA NESBITT | Judge Matthew F. Kennelly |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant JESSICA NESBITT, and her attorney, ADAM SHEPPARD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The superseding indictment in this case charges defendant with conspiracy, in violation of Title 18, United States Code, Section 371 (Count One); using a facility in interstate commerce to promote and carry on unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3) (Counts Two through Eight); inducing individuals to travel in interstate commerce for prostitution, in violation of Title 18, United States Code, Section 2422(a) (Count Nine); transporting an individual in interstate commerce for prostitution, in violation of Title 18, United States Code, Section 2421(a) (Count Ten); and structuring, in violation of Title 31, United States Code, Section 5324(a)(3) and (d)(2) (Counts Eleven through Thirteen).

3. Defendant has read the charges against her contained in the superseding indictment, and those charges have been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the superseding indictment: Count One, which charges defendant with conspiracy, in violation of Title 18, United States Code, Section 371.

## Factual Basis

6. Defendant will plead guilty because she is in fact guilty of the charge contained in Count One of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and establish a basis for forfeiture of the property and funds described elsewhere in this Plea Agreement:

Beginning in or around September 2010, and continuing until on or about January 11, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant JESSICA NESBITT did knowingly conspire with others known and unknown to commit an offense against the United States, that is (a) to travel and cause to travel in interstate commerce, and to use and caused to be used a facility in interstate commerce, with intent to promote, manage, establish, carry on,

2

and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, prostitution offenses in violation of Cal. Penal Code § 647(b), D.C. Code § 22-2701, Fla. Stat. § 796.07, 720 ILCS §§ 5/11-14 and 5/11-14.3, Ind. Code §§ 35-45-4-2 and 35-45-4-4, N.R.S. 201.354, and W.S.A. 944.30, and thereafter to perform an act to carry on and facilitate the promotion and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3), (b) to knowingly transport an individual in interstate commerce with intent that such individual engage in prostitution, in violation of Title 18, United States Code, Section 2421(a); and (c) to knowingly persuade, induce, and entice an individual to travel in interstate commerce to engage in prostitution, in violation of Title 18, United States Code, Section 2422(a).

Specifically, beginning no later than September 2010, and continuing until at least January 11, 2017, NESBITT owned and operated Selective Management Enterprises, Inc., also known as Kink Extraordinaires ("KE"), which was located within condominium units at 2452 West Augusta Boulevard, Chicago, Illinois (the "Augusta Building"). NESBITT employed multiple individuals at KE, including Individuals A-E, in part for the purpose performing acts of prostitution with KE clients. During the same time period, NESBITT and the KE employees agreed to promote prostitution and perform acts of prostitution, and cause the promotion of prostitution and the performance of acts of prostitution, at KE and at other locations outside of Illinois, including California, the District of Columbia, Florida, Indiana,

3

Nevada, and Wisconsin, through travel in interstate commerce, the use of a facility in interstate commerce, the transportation of KE employees in interstate commerce with the intent that those employees engage in prostitution, and the persuading, inducing, and enticing of KE employees to travel in interstate commerce to engage in prostitution.

To promote her business, NESBITT advertised sexual services offered by KE and its employees on multiple websites, including on backpage.com, eros.com, and Gentlemen's Pages, as well as on a website NESBITT caused to be operated, kinkextraordinaires.com. Also, using Google Gmail email accounts she and other employees created (and the servers for which NESBITT acknowledges were located outside Illinois), NESBITT promoted the business of KE, including by using the accounts to communicate with clients and KE employees, and to operate KE. For example, on or about April 17, 2015, NESBITT sent an email to KE employees that contained information regarding the operations of KE. On other occasions, NESBITT emailed KE clients to invite them to sex and fetish parties at KE, including the "Halloween Mischief" and the "Black Tie Bizarre" parties, which clients paid to attend.

At times during the conspiracy, NESBITT, and others working under her employment, arranged for prostitution appointments with KE clients to take place at the Augusta Building, and in fact performed acts of prostitution with KE clients at

that location, charging between approximately $300 to $1,000 per hour depending upon the services provided.

In addition to NESBITT and KE employees engaging in prostitution at the Augusta Building, NESBITT and some of her employees traveled outside of Illinois, including to Miami, Las Vegas, San Diego, and Wisconsin, to engage in acts of prostitution with KE clients. NESBITT assisted in arranging for these appointments, including by emailing flight and other travel information to KE employees and clients. For example, on or about November 30, 2015, NESBITT arranged by email for Individual E (a KE employee) to travel from Chicago, Illinois, to San Diego, California, for the purpose of engaging in sex acts in exchange for money with Client A in California. Similarly, on or about February 22, 2016, NESBITT emailed Individual A and Individual C (KE employees) regarding their travel from Chicago, Illinois, to Las Vegas, Nevada, for the purpose of engaging in acts of prostitution with Client B in Nevada. NESBITT acknowledges that Individual A, Individual C, and Individual E did, in fact, travel from Illinois to other states and engaged in prostitution acts with KE clients.

NESBITT acknowledges that during the conspiracy, NESBITT and KE employees accepted payments totaling over one million dollars in the form of cash or debit, credit, and gift cards for sexual services performed. In order to process the card payments, NESBITT and others working at her direction used credit card terminals maintained at KE, which NESBITT acknowledges caused wire transmissions

between Illinois and placed outside of Illinois, and which ultimately resulted in part in the transfer of funds to a bank account NESBITT controlled and from which she paid herself and KE employees. NESBITT also used the proceeds to operate and maintain KE.

## Maximum Statutory Penalties

7.     Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote

respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b. **Offense Level Calculations**.

i. Pursuant to Guideline § 1B1.2(d), a conviction on a count charging conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.

ii. Pursuant to Guideline § 2X1.1, the base offense level for a conspiracy is the base offense level from the guideline for the underlying substantive

7

offense, plus any adjustments from such guideline conduct that can be established with reasonable certainty.

*Count One – Conspiracy to Commit 18 U.S.C. § 1952(a)(3)*

          iii.      Pursuant to Guidelines §§ 2X1.1 and 2E1.2(a)(2) the base offense level is the offense level applicable to the underlying unlawful activity in respect to which the travel or transportation was undertaken. Pursuant to Guideline § 2E1.2(a)(2), if the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used. The most analogous federal offenses to the state offenses charged in Superseding Indictment ¶ 2(a) are 18 U.S.C. §§ 2421 and 2422(a), which are covered by Guideline § 2G1.1 ("Promoting a Commercial Sex Act").

          iv.      Pursuant to Guideline § 2G1.1(d), if the offense involved more than one victim, Chapter Three, Part D (Multiple Counts) shall be applied as if the promoting of a commercial sex act or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction.

          v.      For <u>each</u> of the three victims named in the Superseding Indictment with respect to activity covered by 18 U.S.C. 1952(a) – Individuals A, Individual C, and Individual E – the following calculations apply:

          1.      The base offense level is 14, pursuant to Guideline § 2G1.1(a).

8

2.      It is the government's position that, pursuant to Guideline § 3B1.1(a), four levels are added, because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Defendant disagrees with this enhancement.

vi.      Pursuant to Guideline § 3D1.4(a), the three victim counts are equally serious, and thus count as three Units. Pursuant to § 3D1.4, three levels are added for the three Units.

vii.      It is the government's position that the combined base offense level is 21. It is the defendant's position that the combined base offense level is 17.

*Count One – Conspiracy to Commit 18 U.S.C. § 2421(a)*

i.      The base offense level is 14, pursuant to Guidelines §§ 2X1.1 and 2G1.1.

ii.      It is the government's position that, pursuant to Guideline § 3B1.1(a), four levels are added, because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Defendant disagrees with this enhancement.

iii.      Pursuant to Guideline § 2G1.1(d), for each of the three victims named in the Superseding Indictment with respect to activity covered by 18 U.S.C. § 2421 – Individuals A, Individual C, and Individual E – the following calculations apply:

9

1. The base offense level is 14, pursuant to Guideline § 2G1.1(a).

2. It is the government's position that, pursuant to Guideline § 3B1.1(a), four levels are added, because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Defendant disagrees with this enhancement.

iv. Pursuant to Guideline § 3D1.4(a), the three victim counts are equally serious, and thus count as three Units. Pursuant to § 3D1.4, three levels are added for the three Units.

v. It is the government's position that the combined base offense level is 21. It is the defendant's position that the combined offense level is 17.

*Count One – Conspiracy to Commit 18 U.S.C. § 2422(a)*

vi. The base offense level is 14, pursuant to Guidelines §§ 2X1.1 (Conspiracy) and 2G1.1.

vii. It is the government's position that, pursuant to Guideline § 3B1.1(a), four levels are added, because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Defendant disagrees with this enhancement.

viii. Pursuant to Guideline § 2G1.1(d), for each of the three victims named in the Superseding Indictment with respect to activity covered by 18

10

U.S.C. § 2422 – Individuals A, Individual C, and Individual E – the following calculations apply:

      1.     The base offense level is 14, pursuant to Guideline § 2G1.1(a).

      2.     It is the government's position that, pursuant to Guideline § 3B1.1(a), four levels are added, because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Defendant disagrees with this enhancement.

      ix.     Pursuant to Guideline § 3D1.4(a), the three victim counts are equally serious, and thus count as three Units. Pursuant to § 3D1.4, three levels are added for the three Units.

      x.     It is the government's position that the combined base offense level is 21. It is the defendant's position that the combined offense level is 17.

*Groups of Closely Related Counts for Underlying Conspiracy Offenses*

      xi.     Pursuant to Guidelines §§ 3D1.2(a), and 3D1.3, the underlying conspiracy offenses are grouped because each underlying offense involve the same victims and same acts or transactions. It is the government's position that the offense level for the Group of Closely Related Counts is 21, the highest offense level of the Group. It is the defendant's position that the offense level for the Group of Closely Related Counts is 17.

     xii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

     xiii.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

     c.     **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 1 and defendant's criminal history category is I:

     i.     On or about September 13, 2013, defendant was convicted of disorderly conduct in the Circuit Court of Cook County and sentenced to 2 years'

condition discharge. Pursuant to Guideline §§ 4A1.1(c) and 4A1.2(c), defendant receives 1 criminal history point for this sentence.

      d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 18 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 27 to 33 months' imprisonment, in addition to any supervised release and fine the Court may impose. It is the defendant's position that the anticipated offense level is 14 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 15 to 21 months' imprisonment, in addition to any supervised release and fine the Court may impose.

      e. Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

10.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.    Each party is free to recommend whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

14

13.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

## Forfeiture

15.     Defendant understands that by pleading guilty, she will subject to forfeiture to the United States all right, title, and interest that she has in any property constituting or derived from proceeds traceable to the offense.

16.     Defendant agrees to the entry of a personal money judgment in the amount of $17,500, which represents proceeds traceable to the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment she will be ordered to pay.

17.     Defendant admits that the real property located at 2452 W. Augusta Boulevard, Units 1 and 3, Chicago Illinois, is directly forfeitable because this real property constitutes or is derived from proceeds traceable to the offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

18.    Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

19.    The government agrees it will not seek forfeiture of the real property commonly known as 2452 W. Augusta Boulevard, Units 1 and 3, Chicago, Illinois, and shall record a release of its *lis pendens* against the property, in the event the defendant makes payments to the United States Marshals Service totaling $194,634 within 90 days of the entry of her guilty plea.

20.    Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

21.    Defendant further acknowledges that on or about February 10, 2017, administrative forfeiture proceedings were commenced against certain property, including (a) approximately $8,958.94 seized by law enforcement from Fifth Third Bank account no. xx5326 on or about January 11, 2017; (b) approximately $34,489.70 seized by law enforcement from Fifth Third Bank account no. xx4287 on or about January 11, 2017; (c) approximately $35,067 seized by law enforcement from Associated Bank account no. xx9327 on or about January 11, 2017; (d) approximately

16

$102,505.69 seized by law enforcement from Charles Schwab account no. xx1552 on or about January 11, 2017; (e) approximately $2,647.10 seized by law enforcement from Associated Bank account no. xx1607 on or about January 11, 2017; (f) approximately $16,086 seized by law enforcement from 3911 N. Western Avenue, Chicago, Illinois on or about January 11, 2017; and (g) approximately $1,385.81 seized by law enforcement from 2452 W. Augusta Boulevard, Chicago, Illinois on or about January 11, 2017.

22.   By signing this plea agreement, defendant acknowledges that she had notice of the administrative forfeiture proceeding, relinquishes any right, title, and interest she may have had in this property, withdraws any previously filed claims, and understands that an administrative decree of forfeiture will be entered, thereby extinguishing any claim she may have had in the seized property.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

23.   This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 19 CR 371.

24.   This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other

17

person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

25.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving

18

defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

     b.    **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

    26.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

    27.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

    28.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that

providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

29. For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

30. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

31.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

32.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33.     Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

35. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36. Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _2-8-2023_

Signed by Brian Hayes on behalf of
JOHN R. LAUSCH, JR.
United States Attorney

JESSICA NESBITT
Defendant

ERIKA CSICSILA
Assistant U.S. Attorney

ADAM SHEPPARD
Attorney for Defendant

23